1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CUVIELLO, et. al.,

        Plaintiffs,

  v.

CITY OF OAKLAND, et. al.,

        Defendants.

No. C 06-05517 MHP

**MEMORANDUM & ORDER**

**Re: Plaintiffs' Motion for Sanctions**

On September 8, 2006 plaintiffs Joseph Cuviello and Deniz Bolbol filed an action against the City of Oakland, Alameda County, Oakland-Alameda County Coliseum Authority, Oakland Coliseum Joint Venture, L.L.C., SMG—a foreign corporation, Oakland Police Department Officers R. Valladon and R. Villegas and Oakland Coliseum Assistant Security Manager Leroy "Skeet" Ellis claiming violations of their civil rights.  This court issued a preliminary injunction.  Plaintiffs have now moved for sanctions against defendants for an alleged violation of the preliminary injunction. Having considered the parties' arguments and submissions and for the reasons set forth below, the court rules as follows.

BACKGROUND

On August 14, 2007 this court granted plaintiffs a preliminary injunction with respect to circus events scheduled for later that week at the Oakland Coliseum.  See Docket No. 47 (hereinafter "Injunction Order").  The order enjoined defendants from: "(1) requiring Plaintiffs to purchase a ticket in order to enter the north ramp of the Coliseum and videotape circus animals from the north ramp landing; (2) refusing to permit Plaintiffs and up to four additional persons acting in concert with Plaintiffs to stand at or near the railway of the north ramp landing in order to photograph or

1  videotape circus animals; and (3) harassing or preventing Plaintiffs from reaching the north ramp

2  landing, absent a law violation."[1]  Id. at 10–11.

3          From August 16 to 19, 2007 the Ringling Brothers Circus held performances at the Oakland

4  Coliseum ("Coliseum").  Cuviello Dec. ¶ 6.  During this time, plaintiffs sought to exercise their right

5  to free speech by videotaping circus animals from a vantage point on the north landing above the

6  arena entrance.[2]  Id. ¶¶ 3, 6; Bolbol Dec. ¶ 3.

7          The north landing could generally be reached via five routes:  the east and west staircases,

8  the east and west ramps and a walkway leading from the south entrance.  Docket No. 72,

9  February 5, 2008 Evidentiary Hearing Transcript (hereinafter "Tr.") at 57:1–13.  The east ramp was

10  open to the public at all times during the circus.  Id. at 36, 101–02, 177–78, 203.  However, event

11  personnel sometimes blocked the east staircase.  Id. at 99–100.  The west staircase was closed

12  throughout the duration of the event.  See Pl.'s Exh. 3, Clips 1–21.  It is unclear whether the west

13  ramp was closed or open to the public throughout the duration of the circus.  The court conjectures

14  that plaintiffs were not able to access the north landing via the walkway from the south entrance,

15  since defendants failed to raise such an argument.

16          In preparation for the event, Oakland-Alameda Coliseum Authority contracted with Oakland

17  Coliseum Joint Venture, L.L.C., a subsidiary of SMG, to provide security guards during the four day

18  event period.  Tr. at 93; Docket No. 60, First Amended Complaint, ¶ 12.  The attorney representing

19  defendants, Ed Baldwin, notified Coliseum Assistant Security Manager Ellis of the injunction on

20  August 15, 2007, the day before opening night.  Tr. at 95–96, 196.  Ellis briefed his security force an

21  hour prior to performances on each day of the circus based on his understanding of the injunction.

22  Id. at 120–22.

23          Ringling Brother Circus also hired additional police officers, employed by City of Oakland,

24  to supplement security.  Id. at 94, 140:19–22.  Sergeant Patrick Gonzales, who supervised a detail of

25  officers during two days of the event, testified that he had no knowledge of the injunction prior to or

26  upon his arrival at the Coliseum.[3]  Id. at 140, 145, 148–51.  Gonzales first became aware of the court

27  order when Cuviello handed him a copy on the third day of the circus, Saturday, August 18.

28

United States District Court
For the Northern District of California

1

2        A.      <u>Pre-Event Occurrences</u>

3        Circus animals were to enter the Coliseum through a tunnel at the north entrance of the

4 arena.  <u>See</u> Injunction Order at 2:14–17.  The tunnel is flanked by two staircases, one on each side,

5 which lead from the north parking lot to a twenty foot landing directly above the tunnel entrance

6 ("north landing").  <u>See</u> <u>id.</u> at 2:12–14; Pl.'s Exh. 3, Clips 3, 5.  Next to each staircase are ramps, the

7 east and west ramp, which also lead to the north landing.  <u>Id.</u>  Plaintiffs sought to position

8 themselves on the north landing to overlook the tunnel and film the animals as they entered the

9 arena.  <u>Id.</u>

10        Prior to opening night, event personnel erected a mobile barrier on the north landing, parallel

11 to the railing which borders the edge of the north landing and directly overlooks the tunnel entrance,

12 to restrict patrons from accessing an area approximately twelve to sixteen feet long and four to six

13 feet deep ("railway barrier").  Ellis Dec. ¶ 6; Tr. at 125:4–7; Injunction Order at 2:13–14.  The

14 railway barrier was constructed using portable bicycle racks and yellow tape and remained standing

15 throughout the duration of the circus.  Tr. at 17:12–21, 114:17–24.  Security guards were given strict

16 instructions to keep patrons out of this restricted area.  <u>Id.</u> at 111:3–8.

17

18        B.      <u>Day One, Thursday</u>

19        On Thursday, August 16, the first day of the circus, the east staircase and east ramp leading

20 to the north landing were both open for public use.  Pl.'s Exh. 3, Clips 3, 5, 6.  Upon reaching the

21 landing, plaintiffs physically moved the railway barrier on the north landing to film and were told by

22 security guards that they were not permitted in that area.  Tr. at 14–15; Cuviello Dec. ¶ 7.  Bolbol

23 testified that she called upon Baldwin, who witnessed the incident, to rectify the misunderstanding;

24 however, Baldwin was unresponsive.  Tr. at 14–15; Pl.'s Exh. 3, Clip 1.  In contrast, Ellis testified

25 that after being called to the scene, he met with Baldwin, who requested that plaintiffs be given

26 special permission to stand inside the movable barrier.  Ellis Dec. ¶ 7.

27        Plaintiffs were subsequently granted special access to the restricted area, which allowed them

28 to stand next to the railing at the very edge of the landing and overlook the tunnel entrance below.

3

United States District Court
For the Northern District of California

Id.  Ellis testified that he communicated this policy to all on-duty security personnel over dispatch radio.  Tr. at 104:22–25.  However, it is unclear whether the policy was communicated to new guards on succeeding nights or whether the policy was even intended to remain for the duration of the four-day event.  Id. at 105, 199; Ellis Dec. ¶ 7.  Notwithstanding this brief initial opposition from security, plaintiffs successfully videotaped the circus animals from within the restricted area at the railway on Thursday, August 16.  Id. at 15:15–17, 61:9; Pl.'s Exh. 3, Clip 4.

C.  Day Two, Friday

On Friday, August 17, the east staircase leading to the north landing was closed to the public; however, the east ramp was open for public use.  Pl.'s Exh. 3, Clips 8, 9, 10.  Plaintiffs testified that despite a barrier restricting access to the east staircase, which plaintiffs moved or security guards moved for them, plaintiffs used the east staircase on this day without issue.  Cuviello Dec. ¶ 9; Tr. at 17:23–25.  Plaintiffs had no trouble videotaping from within the restricted landing zone.  Tr. at 18–19, 62.

D.  Day Three, Saturday

On Saturday, August 18, the east staircase leading to the north landing was closed; however, the east ramp was open for public use.  Pl.'s Exh. 3, Clip 11.  Cuviello utilized the east ramp to access the north landing.  Tr. at 81:14–16.  Bolbol, however, elected to use the closed east staircase. Id. at 20–21; Pl.'s Exh. 3, Clips 11, 12.  Security guards positioned at the bottom of the stairs instructed Bolbol to use the open east ramp.  See Pl.'s Exh. 3, Clips 11, 12.  Bolbol resisted until a female security guard arrived at the scene and told the guards to let Bolbol pass.  Id.  At the top of the stairs, Bolbol encountered a second barrier and again received instructions from the guards to make use of the open east ramp.  Id.  Bolbol's associate, Cuviello, then physically moved the barrier such that Bolbol could pass through, but only after initiating a physical struggle with security personnel.  Tr. at 22; Pl.'s Exh. 3, Clip 11.  Bolbol then videotaped from within the restricted area for a short time, eventually descending via the east stairway, where she moved the barrier without issue.  Tr. at 22–25.

4

United States District Court

For the Northern District of California

1   As Bolbol ascended the stairs a second time, security guards blocked the landing.  Id.; Pl.'s

2   Exh. 3, Clip 14.  The guards reiterated instructions to use the east ramp.  Pl.'s Exh. 3, Clips 14–17.

3   The situation escalated into an argument, during which time plaintiffs continued to videotape the

4   guards and, at one point, held their camera inches away from the faces of Sergeant Gonzales and

5   other security personnel.  Pl.'s Exh. 3, Clips 15–18, 21.  The guards teased Cuviello regarding his

6   personal hygiene and feet.  Id.  At one point, the guards commented that they "don't make threats,

7   only promises."  Id.  One guard called Cuviello a "faggot" after Cuviello put his camera close to the

8   guard's face, interrogated him and told him to think of a good answer, but not to hurt himself.  Id.

9   After ten to fifteen minutes, Bolbol descended the stairs and walked up the east ramp to the north

10  landing.  Tr. at 27.  Following this incident, Sergeant Gonzales allowed plaintiffs to use the east

11  staircase.[4]  Pl.'s Exh. 3, Clip 20; Tr. at 29.  Plaintiffs encountered no further issues with their use of

12  the east staircase for the remainder of the day, except for one instance when "Buzz" Golphin

13  commented to Bolbol when she moved the staircase barrier, "where are you going, Deniz?  You are

14  just trying to make someone beat your ass."  Pl.'s Exh. 3, Clip 22; Tr. at 30–32.

15

16      E.      Day Four, Sunday

17  On Sunday, August 19, the last day of the circus, the east staircase leading to the north

18  landing was again closed; however, the east ramp was open for public use.  Pl.'s Exh. 3, Clip 23.

19  Despite the barriers, plaintiffs freely used the east staircase and filmed within the barricade on the

20  north landing railway.  Tr. at 33:3–7.  Around nine in the evening, security guard Wetherbee told

21  Cuviello that he was not allowed to stand within the restricted area.  Pl.'s Exh. 3, Clip 24.

22  Wetherbee proceeded to throw Cuviello's bag of food out of the area and grab the pole upon which

23  Cuviello's camera was attached, shaking it before walking away.  Id.  No further incidents between

24  plaintiffs and security personnel occurred on that day.  Tr. at 71:1–25.

25

26

27

28

5

F.      Summary

In sum, plaintiffs could at all times reach the north landing via at least one of five access routes—the east ramp.  Id. at 36, 101–02, 177–78, 203.  Plaintiffs were only denied access to the north landing via the east staircase at certain times on particular days.  See Pl.'s Exh. 3, Clips 1-21.  Security personnel never denied plaintiffs physical access to film from within the area guarded by the blockade at the north landing.  Tr. at 33:8–19, 47–8, 74:9–13.  However, security guards reproached plaintiffs numerous times for standing within this restricted zone.  Id. at 84:19–25.  Nevertheless, event personnel intervened almost immediately to confirm plaintiffs' access.  Id.

LEGAL STANDARD

The standard for finding a party in civil contempt is well settled: "the moving party has the burden of showing by clear and convincing evidence that the [nonmoving party] violated a specific and definite order of the court."  FTC v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting Stone v. City & County of San Francisco, 968 F.2d 850, 856 n.9 (9th Cir. 1992)).

If a party is held to be in civil contempt, the decision as to whether sanctions should be imposed lies within the sound discretion of the district court.  See Jerry's Famous Deli, Inc. v. Papanicolaou, 383 F.3d 998, 1004 (9th Cir. 2004).

DISCUSSION

Plaintiffs argue that defendants violated this court's order by:  (1) repeatedly harassing plaintiffs; (2) restricting access to the east staircase; and (3) restricting access to the railing on the north landing.  Plaintiffs also make three additional allegations that: (1) defendants failed to effectively communicate the existence of the injunction and its terms to event staff; (2) defendants placed arbitrary and inconsistent restrictions on access to the railway and east staircase in order to subvert plaintiffs' videotaping activity and appease Ringling Brothers Circus; (3) and Sergeant Gonzales disrespected plaintiffs by failing to enforce the injunction.

United States District Court

For the Northern District of California

6

1

2          A.        Harassment

3          Harassment is defined as "words, conduct or action that . . . causes substantial emotional

4   distress . . . and serves no legitimate purpose."  Black's Law Dictionary 733 (8th ed. 2004).

5          Plaintiffs allege several incidents of harassment.  The first involves the series of events on

6   August 18th, during which defendants inconsistently and arbitrarily imposed restrictions on

7   plaintiffs' use of the east staircase.  In arguing that such limitations constitute harassment, plaintiffs

8   neglect the fact that at all times during the four-day event, they had at their disposal at least one

9   viable, alternative route to the landing—the east ramp.  See Tr. at 36, 101–02, 177–78.  Therefore,

10  any allegation that the closure of the east stairway caused emotional distress is unpersuasive.

11         Plaintiffs next allege that sporadic warnings from security personnel to leave the restricted

12  area within the railway barrier on the north landing, coupled with Cuviello's incident with security

13  guard Wetherbee on August 19, constituted harassment.  Although more compelling, this argument

14  also fails to satisfy the threshold requirement of substantial emotional distress.  Plaintiffs concede

15  that they were never physically denied access to the restricted area.  Id. at 74:9–13.  Bolbol even

16  described the resistance she encountered as "incidental" since plaintiffs were always able to film at

17  or near the railway.  Id. at 33:8–19.  Moreover, the situation with Wetherbee lasted under a minute,

18  resulted in no damage to Cuviello's property, and concluded with Wetherbee's retreat and no further

19  disruptions.  Id. at 75–76, 85; Pl.'s Exh. 3, Clips 1, 24.  Thus, plaintiffs' contention that defendants

20  harassed plaintiffs while guarding the railway barrier is similarly unpersuasive.

21         Lastly, plaintiffs allege they were harassed when defendants insulted, threatened and

22  intimidated plaintiffs during the August 18 incident on the east staircase.  Indeed, security guards

23  were extremely discourteous to plaintiffs when joking about plaintiffs' personal hygiene and feet

24  and calling Cuviello a "faggot."  See Pl.'s Exh. 3, Clip 21.  The court strongly admonishes against

25  this behavior.  However, the evidence also demonstrates that plaintiffs provoked tension by holding

26  their cameras only inches away from the faces of Sergeant Gonzales and security personnel while

27  questioning and chastising them about their job, orders and wages.  See id. (video clip depicting

28  plaintiffs' comments, "Are you getting time and a half, what is it $70 an hour? . . . Are you making a

United States District Court
For the Northern District of California

7

1    mockery of the court? . . . You have no respect for Judge Patel, is that right?").  Thus, plaintiffs

2    cannot demonstrate that defendants caused plaintiffs substantial emotional distress for no legitimate

3    purpose.

4

5         B.    Access to East Stairway

6         Second, plaintiffs argue that defendants violated the injunction by restricting access to the

7    east staircase.  Whether such restrictions violate California's Liberty of Speech Clause, as plaintiffs

8    allege, is a question beyond the scope of the present motion.  The issue here is whether blocking the

9    stairs violated the terms of the injunction, not whether such restriction constitutes an illegal

10   limitation on free speech.  The injunction order gave plaintiffs a right to "enter the north ramp and

11   videotape at the north ramp landing" and enjoined defendants from "preventing Plaintiffs from

12   reaching the north ramp landing."  Injunction Order at 10–11.  Further, although the order explicitly

13   deemed the north ramp and north ramp landing to be public fora, it remained silent with respect to

14   the east staircase.[5]  See generally Injunction Order.  The court finds no ambiguity in this language,

15   especially in light of plaintiffs' narrow request to "videotape from only the north ramp landing itself,

16   and not the north ramp, and [to] use the north ramp merely to reach the landing."  Id. at 7 n.5

17   (plaintiffs' testimony at the preliminary injunction hearing).  Here, defendants at no time prevented

18   plaintiffs from reaching the north landing.  Both Cuviello and Bolbol had ample opportunity to use

19   the open east ramp at all times throughout the duration of the circus.  See Tr. at 36, 101–02, 177–78.

20   Consequently, plaintiffs cannot show with clear and convincing evidence that the defendants

21   violated the injunction by restricting access to the east staircase.[6]

22

23        C.    Access to North Landing

24        Third, plaintiffs argue that defendants violated the injunction by restricting access to the

25   railway on the north landing.  The injunction unambiguously gave plaintiffs a right "to stand at or

26   near the railway of the north ramp landing in order to photograph or videotape."  See Injunction

27   Order at 10–11.  Plaintiffs concede that at no time during the four-day event did defendants

28   physically deny plaintiffs access to the restricted area at or near the railway.  Tr. at 33:8–19 (Bolbol

United States District Court
For the Northern District of California

8

**United States District Court**

For the Northern District of California

1    testified that "[t]here were always people telling me I could not do or be where I was, but they were

2    incidental because I was able to proceed"), 74:9–13 (Cuviello testified that he was never physically

3    denied access to the north landing at or near the railway during the entire four-day circus).

4    Plaintiffs' testimony is sufficient to establish that defendants did not violate the injunction.[7]

5

6           D.      Other Allegations

7           First, plaintiffs' allegation that defendants did not take the injunction seriously is, in the

8    absence of a violation, of no import with respect to the present motion.  Nevertheless, the court

9    recognizes that defendants' lackluster effort to ensure that all event staff were made aware of the

10   injunction largely exacerbated tensions between plaintiffs and security guards.  Although Ellis

11   testified that on August 16 he informed event staff over dispatch radio that plaintiffs had permission

12   to stand within the railway barrier, Cuviello's encounter with security guard Wetherbee three days

13   later, on August 19, demonstrates that this information was not reiterated to guards on succeeding

14   nights.  Tr. at 104:22–25; see Pl.'s Exh. 3, Clip 24.  Sergeant Gonzales further testified that no

15   formal briefing process exists for officers hired to work at the Coliseum, and thus he was not aware

16   of the injunction until the last day of the circus.  Tr. at 147–51.  Even the Captain of Security,

17   "Buzz" Golphin, was not informed of the injunction until the first incident between plaintiffs and

18   security personnel at the railway barrier on August 16.  Id. at 215–16.  Although the ignorance of

19   event staff did not manifest itself in a violation of the injunction during the 2007 circus, it very well

20   could have.  Defendants would be well advised to institute procedures that inform personnel of such

21   injunctions in the future.

22          Second, plaintiffs' contention that limitations on access to the north landing and east

23   staircase were arbitrary, capricious and ultimately promulgated to subvert plaintiffs' videotaping and

24   appease Ringling Brothers is also irrelevant given the court's finding above.  Although defendants'

25   behavior may well raise valid First Amendment concerns, such questions are outside the scope of the

26   present motion.  The court, however, notes that defendants' policy regarding the stairs was neither

27   uniformly implemented nor consistently enforced.  On August 16, the first day of the circus, the east

28   stairway was open for public use, yet on all subsequent days the same stairway was closed.  See Pl.'s

1   Exh. 3, Clips 3, 5, 6, 8–11.  Security personnel sporadically barred plaintiffs from accessing the east

2   stairway, yet on other occasions granted permission.  See Pl.'s Exh. 3, Clips 11, 12 (security guards

3   denying Bolbol access to the stairs), 20, 22 (Sergeant Gonzales allowing plaintiffs to access the

4   stairs).  Further, defendants' purported justification for closing the east staircase, the safety of

5   patrons and animals, is suspect in light of this court's prior finding that such concerns were

6   speculative.  See Injunction Order at 7:4–5.

7        Finally, plaintiffs' allegation that Sergeant Gonzalez disrespected plaintiffs by failing to

8   enforce the injunction is moot in light of a determination that defendants did not violate the

9   August 14 injunction.

10

11  CONCLUSION

12       For the foregoing reasons, plaintiffs' motion for sanctions is DENIED.

13       IT IS SO ORDERED.

14

15  Dated: June 20, 2008

16                                              MARILYN HALL PATEL
                                                United States District Court Judge
                                                Northern District of California
17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

2

## **ENDNOTES**

3
4
1.      Although plaintiffs do not argue that "harassing or preventing Plaintiffs from reaching the north ramp landing" is ambiguous, a live question of interpretation exists.

5
6
2.      Plaintiffs are members of Citizens for Cruelty-Free Entertainment, a San Francisco Bay Area group dedicated to the humane treatment of animals and to educating the public about the abuse and mistreatment of animals in circuses.  See Docket No. 60, First Amended Complaint, ¶ 25.

7
8
3.      It is unclear on which two days Gonzales worked at the circus.  Gonzales confirmed that he was on-duty on the third day, August 18.  However, it is unclear whether this was his first or second day on duty.

9
10
4.      Sergeant Gonzales testified that he allowed plaintiffs to access the east stairway after speaking with Sergeant Espinoza, head of Oakland Police's Special Events department, about his concern regarding the escalating situation.  Tr. at 141, 173–6; Pl.'s Exh. 3, Clip 20.

11
12
5.      The east ramp joins the west ramp at the top of the north entrance to create the north landing. Hence, the injunction employs the term "north ramp" to refer to the east ramp at the north entrance.

13
6.      In the future, plaintiffs are advised to seek a more specific injunction to preempt such disputes.

14
7.      Plaintiffs' argument that the act of placing a barrier on the landing constitutes an illegal limitation on plaintiffs' right to free speech is outside the scope of this motion and order.

15

16

17

18

19

20

21

22

23

24

25

26

27

28