UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. CUVIELLO, *et al.*, | No. C-06-5517 MHP (EMC) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION RE PLAINTIFFS' MOTION TO MODIFY PRELIMINARY INJUNCTION** |
| CITY OF OAKLAND, *et al.*, | |
| Defendants. | **(Docket No. 199)** |

Plaintiffs Joseph Cuviello and Deniz Bolbol have filed suit against Defendants the City of Oakland, Alameda County, Oakland-Alameda County Coliseum Authority, Oakland Coliseum Joint Venture L.L.C., SMG, Oakland Police Officer R. Villegas, Oakland Coliseum Assistant Security Manager "Skeet" Ellis, and Oakland Police Officer R. Valladon, alleging violation of their civil rights.  Presently before the Court is Plaintiffs' motion to modify the parties' stipulated preliminary injunction, which was referred to the undersigned for a report and recommendation.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and Mr. Cuviello (proceeding pro se), the Court hereby recommends that the motion for modification be **GRANTED** in part and **DENIED** in part.

## I. FACTUAL & PROCEDURAL BACKGROUND

On March 19, 2009, this Court issued an order regarding Plaintiffs' motion for contempt sanctions.  *See* Docket No. 180 (order).  In that order, the Court provided a summary of the relevant facts leading up to the motion.

1     This Court previously issued a report and recommendation on Plaintiffs' motion for a preliminary injunction, *see* Docket No. 47 (R&R, filed on 8/14/07), which Judge Patel adopted in its entirety. *See* Docket No. 48 (order, filed on 8/15/07). The preliminary injunction recommended and ultimately adopted by Judge Patel enjoined Defendants

> from: (1) requiring Plaintiffs to have a ticket in order to enter the north ramp and videotape at the north ramp landing; (2) refusing to permit Plaintiffs, and up to four additional persons acting in concert with Plaintiffs, to stand at or near the railway of the north ramp landing in order to photograph or videotape circus animals; and (3) harassing or preventing Plaintiffs from reaching the north ramp landing, absent a law violation.

Docket No. 47 (R&R at 10-11).

After the report and recommendation was issued and adopted, Plaintiffs went to the Arena to exercise their right to free speech during a Ringling Brothers Circus engagement, which lasted from August 16 to 19, 2007. *See* Docket No. 76 (Order at 2). According to Plaintiffs, during this time, the City and SMG violated the terms of the preliminary injunction and thereafter Plaintiffs moved for an order to show cause regarding contempt and sanctions. *See* Docket No. 54 (motion, filed on 10/22/07).

Judge Patel held an evidentiary hearing on Plaintiffs' motion in January 2008. *See* Docket Nos. 71-72 (minute order and transcript of hearing). Subsequently, she issued an order denying Plaintiffs' motion. *See* Docket No. 76 (order, filed on 6/23/08). In the order, Judge Patel noted, *inter alia*, that Defendants had not violated the terms of the preliminary injunction by restricting access to the east staircase because the preliminary injunction addressed only the north ramp and landing. *See* Docket No. 76 (Order at 8). In a footnote, Judge Patel advised Plaintiffs "to seek a more specific injunction to preempt such disputes." *See* Docket No. 76 (Order at 11 n.6.).

Plaintiffs seem to have taken Judge Patel's advice to heart. Approximately two weeks after Judge Patel's order was issued, they filed a motion to modify the preliminary injunction. *See* Docket No. 77 (motion, filed on 7/7/08). One of Plaintiffs' requests was that the preliminary injunction "be modified to protect [their] rights in all exterior fora of the [A]rena property." Docket No. 77 (Mot. at 2). Plaintiffs seemed particularly concerned, however, about the northeast staircase. *See* Docket No. 77 (Mot. at 4). Plaintiffs also asked that the preliminary injunction be modified so that Defendants could not physically touch either Plaintiffs or their property. *See* Docket No. 77 (Mot. at 7).

Plaintiffs' motion was ultimately rendered moot because the parties entered into a stipulated preliminary injunction, which Judge Patel signed on August 1, 2008. *See* Docket No. 81 (stipulation and order). The new terms of the preliminary injunction were as follows:

2

> 1) Absent a violation of law, plaintiffs are allowed to fully access the exterior areas of the arena, and freely move between said areas, including the north ramp landing, the northeast stairs which lead down from the north ramp landing alongside the north tunnel, and the area at the base of the northeast stairs.
>
> 2) Defendants are enjoined from physically touching plaintiffs and their person property, save law enforcement making a lawful arrest, and only then to the extent reasonably necessary to effect the arrest.
>
> 3) Absent a violation of law, defendants are enjoined from interfering in any way with plaintiffs' lawful free speech activities.

Docket No. 81 (Stip. & Order at 1-2).

. . . .

> According to Plaintiffs, the above Defendants violated the terms of the stipulated preliminary injunction in three ways [during the month of August 2008]: (1) by restricting the area around the entrance to the Animal Open House to ticketed persons only and then having Plaintiffs arrested for being in the restricted area without a ticket; (2) by requiring Plaintiffs to have a police escort in order for them to access the western part of the north landing; and (3) by a police officer informing Ms. Bolbol that, if she accessed a parking lot area near the animal compound, he would likely arrest her if asked.

Docket No. 180 (Order at 2-3).

The current dispute arose after Defendants imposed the above restrictions on access to certain areas of the Arena during the August 2008 circus engagement. According to Plaintiffs, these restrictions violated the stipulated preliminary injunction, and Plaintiffs asked that Defendants be sanctioned for the violation. The Court scheduled a hearing on Plaintiffs' contempt motion. In its order of March 19, the Court concluded, *inter alia*, that the last two provisions of the stipulated preliminary injunction were essentially "obey the law" injunctions and therefore unenforceable; however, the asserted violation of the first provision required an evidentiary hearing.[1] *See* Docket No. 180 (Order at 5). Because of this preliminary ruling, and because of the continued problems

---

[1] Plaintiffs did not ask for an evidentiary hearing in their papers. The first time that they asked for an evidentiary hearing was during the hearing on the contempt motion, held on March 11, 2009.

between Plaintiffs and Defendants regarding Plaintiffs' activity at the Arena during the 2008 circus events, Plaintiffs now move to modify the stipulated preliminary injunction.

## II. DISCUSSION

"[A] district court retains jurisdiction to modify the terms of its injunctions in the event that a change in circumstances requires it." *Anderson v. Central Point Sch. Dist.*, 746 F.2d 505, 507 (9th Cir. 1984). While, typically, "[a] party seeking modification . . . of an injunction bears the burden of establishing that a significant change in facts or law warrants revision . . . of the injunction," *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000), Defendants in the instant case do not contest Plaintiffs' basic contention that the stipulated preliminary injunction is in need of modification. The dispute between the parties is what the specific terms of the new preliminary injunction should be. In resolving this issue, the Court is guided by the traditional test as to whether a preliminary injunction should issue -- *i.e.*, whether (1) there is "a likelihood of success on the merits and the possibility of irreparable injury" or (2) "serious questions going to the merits were raised and the balance of hardships tips sharply in [the plaintiff's] favor."[2] *Lands Council v. Martin*, 479 F.3d 636, 639 (9th Cir. 2007) (internal quotation marks omitted).

At the hearing on this motion on July 30, 2009 (held at the same time as the commencement of the evidentiary hearing on the contempt motion), the Court noted that the preliminary injunction proposed by Plaintiffs was largely unworkable (*e.g.*, by employing the term "public fora" in defining the scope of Plaintiffs' free speech rights) and would fail to provide meaningful guidance to the parties. The Court then ordered the parties to meet and confer in person to determine whether they could reach a practical solution that would accommodate both sides' interests, particularly in view of the upcoming return of the circus to the Arena. At the hearing the next day, the parties reported back on their meet-and-confer efforts. Although the parties largely disagreed as to the specific terms of the preliminary injunction, the meet and confer was helpful inasmuch as it identified the specific areas to which Plaintiffs sought access to in order to engage in their free speech activity (*e.g.*,

---

[2] "'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" *Diamontiney v. Borg*, 918 F.2d 793, 795 (9th Cir. 1990). The advancement of the public interest is also considered in certain cases. *See Lands Council*, 479 F.3d at 639 (9th Cir. 2007).

1  leafletting, videotaping, or otherwise protesting). Those areas are: (1) the area directly adjacent to
2  the perimeter wall of the animal compound; (2) the barricaded corridor which leads patrons to the
3  animal compound[3]; (3) the actual entrance of the animal compound; (4) the upper west landing area;
4  and (5) the area adjacent to the entrance to the north tunnel where the animals enter. Plaintiffs and
5  Defendants also disagreed on whether there could be any limits as to the number of people working
6  in concert with Plaintiffs who would be allowed in these areas.[4]

A.     Perimeter Wall of Animal Compound

The first area at issue is the area directly adjacent to the perimeter wall of the animal compound. The animal compound is an area, located in part of the Arena parking lot, where the circus houses the animals during the engagements at the Arena. During actual performances, animals are led or are driven from the compound and through the north tunnel which is used as an entryway into the Arena. The animal compound has a wall around its perimeter. Plaintiffs wish to access the area directly adjacent to the walls of the animal compound in order to videotape animals in the compound. Defendants contend that there should be no access because the public does not have general access to the parking lot area surrounding the animal compound as that is where trucks and other circus equipment is housed. The parking lot area which houses the trucks and other circus equipment has been referred to as the "truck corral" by Defendants.

As the Court noted in its prior report and recommendation on Plaintiffs' motion for a preliminary injunction, the initial question for the Court is whether the area at issue -- *i.e.*, the area directly adjacent to the perimeter wall -- is a public forum. If so, then, under California law, any restrictions on expression in that area "must be content-neutral, be narrowly tailored to serve an important government interest, and leave open ample alternative channels for the communication of the message.'" *Kuba v. 1-A Agricultural Association*, 387 F.3d 850, 856 (9th Cir. 2004). Under

---

[3] The animal compound is also known as the Animal Open House. The corridor has also been called the "chute" by Defendants and the "queue" by Plaintiffs.

[4] Defendants also expressed concern that the circus would need to agree to any access by Plaintiffs in those areas that the circus leased from the owners of the Arena. Although the Court is not insensitive to the circus's interests, the circus has made no attempt to be a part of this litigation, although it is well aware of the suit. Accordingly, the Court does not view the agreement of the circus as a prerequisite to the preliminary injunction recommended herein.

5

California law, a public forum is not limited to traditional public fora such as streets, sidewalks, and parks. "'Rather, the test under California law is whether the communicative activity is basically incompatible with the normal activity of a particular place at a particular time.'" *Id.* at 857.

As noted above, the areas adjacent to the perimeter wall in question is used to store trucks and other circus equipment. While there is a legitimate reason to restrict the public from generally accessing this area, Plaintiffs' video footage from August 2008 reflects that a number of patrons manage to walk through the truck corral on their way to the animal compound or Arena. In other words, security is not strict. To be sure, Defendants presented evidence at the contempt hearing of a constant effort by security to keep patrons out of the corral. The success of those efforts is not clear. In any event, based on the footage, there is no indication that there would be any significant harm either to Defendants or to the circus if Plaintiffs alone, and a limited number of people acting in concert with them, were permitted to access a path directly adjacent to the perimeter wall. It is highly unlikely that there would be any circus equipment in close proximity to the wall.

The Court concludes that there are at least serious questions on the merits as to whether this area constitutes a public forum under the California Constitution (*i.e.*, whether Plaintiffs' access would be basically incompatible with normal activity in this area) and whether the restrictions are constitutional. Moreover, because access can be restricted so as to minimize any harm to Defendants, the balance of hardships tips decidedly in Plaintiffs' favor. Accordingly, the Court recommends that the preliminary injunction be modified to permit Plaintiffs, and a limited number of people acting in concert with them, access to a "walkway" running along the perimeter wall of the animal compound. The walkway shall be no wider than three feet. If there is any circus equipment or any other object or objects blocking that walkway (whether permanently or simply in transit from one place to another), then Plaintiffs and those acting in concert with them shall be permitted to go outside the walkway to walk around the barrier. Plaintiffs and persons acting in concert with them shall not exceed a total of four.

The Court acknowledges Plaintiffs' objection that there should be no limit in the numbers of people in the absence of any evidence establishing that the desired free speech activity would cause any problems. But Plaintiffs fail to acknowledge that the corral area is reserved for circus

1  equipment.  Given these circumstances, it is a fair balance, for purposes of a preliminary injunction,
2  to place some limit on the number of people (1) to ensure that no harm occurs to circus property and
3  (2) to ensure that no harm is suffered by Plaintiffs or those acting in concert with them as circus
4  equipment is transported during the events.  This limitation in no way prejudges the ultimate merits
5  of whether the restriction on access imposed by Defendants is constitutional.

   The Court also notes that, in its prior report and recommendation on Plaintiffs' motion for preliminary injunction, Plaintiffs represented that they did not envision having more than four people acting in concert with them to videotape on the north ramp and landing.  *See* Docket No. 47 (R&R at 11 & n.6).  Also, in all of the proceedings before this Court, it appears that only three persons have engaged in videotaping -- Plaintiffs and a third activist by the name of Mark Ennis.  These factors also weigh into the Court's conclusion that a four-person limit is fair and reasonable for purposes of the preliminary injunction.

B.   <u>Corridor Leading to Animal Compound</u>

   The parties agree that it has been the historical practice of the circus to allow patrons with tickets to enter the animal compound (for a limited period of time immediately prior to a performance) so that they may have a closer viewing of the animals.  In the past (although perhaps not always), a corridor has been created leading to the animal compound in which patrons are queued before actually entering the compound.  The corridor is delineated by movable barricades and persons who wish to access the animal compound are supposed to enter and exit the compound by using the corridor.  In August 2008, the corridor put in place appeared to be approximately ten- to fifteen-feet wide.  Defendants assert that the corridor is necessary for crowd control purposes and that entry into the corridor must be limited to ticket holding patrons.  Plaintiffs wish to access the inside of the corridor in order to, *e.g.*, distribute leaflets and display signs to patrons.  Although not entirely clear, Plaintiffs also appear to desire access to the area outside of but directly adjacent to the corridor, again to distribute leaflets and display signs.  Defendants' position is that Plaintiffs should be able to convey their message adequately if they are limited to the entrance to the corridor (*i.e.*, farthest away from the entrance to the animal compound).

7

It is possible that some patrons will not use the corridor to enter or exit the animal compound, especially since there is a gap between the corridor and the entrance to the animal compound. The gap, designed to allow the occasional movement of equipment and animals to and from the north tunnel of the Arena, appears to be about ten- to fifteen-feet wide. Plaintiffs claim that, because of this gap, some patrons in August 2008 took a short cut from the parking lot and avoided the corridor altogether before entering the animal compound. Given this situation, the Court does not agree with Defendants that Plaintiffs may adequately communicate their message if they are limited to the area by the entrance to the corridor (*i.e.*, farthest away from the entrance to the animal compound).

On the other hand, full access to the entirety of the corridor and the area outside of but directly adjacent to the corridor has its own problems. The closer one gets to the entrance of the animal compound, the greater the likelihood of congestion problems. Notably, in *Kuba*, the Ninth Circuit recognized that congestion problems are likely to increase the closer one gets to the entrance of a building and thus the court suggested that restrictions on speech in areas in close proximity to an entrance could be acceptable. *See Kuba*, 387 F.3d at 862 ("The closer one gets to the entrance, the more crowded the walkways and driveways will be. Such measures as prohibiting protestors within a certain distance from the entrance to the building, or limiting the overall number of demonstrators in certain areas closer to the entrance, or requiring that protestors stand a certain distance from each other, are all measures that directly respond to the nature of congestion and traffic safety issues in parking lots.").[5]

Plaintiffs argue that there is no evidence of any congestion problems but even their own video footage reflects that, at least at times, there are clusters of people near the entrance to the animal compound. On the other hand, Plaintiffs' August 2008 videos also show that, in general, the corridor is not overly congested. In most clips, there is only a smattering of patrons. At the

---

[5] The Ninth Circuit went on in *Kuba* to cite approvingly "*In re Hoffman*, 67 Cal. 2d 845 (Cal. 1967) (Traynor, J.) (noting that First Amendment activities can be prohibited in 'areas normally subject to congestion, such as ticket windows and turnstiles' and 'persons can be excluded entirely from areas where their presence would threaten personal danger or block the flow of passenger or carrier traffic, such as doorways and loading areas')."

evidentiary hearing on Plaintiffs' contempt motion, Ron Little, Assistant General Manager at the Arena for SMG, testified that, except for the first ten or fifteen minutes of initial queuing in the corridor, the corridor is not normally congested. He initially agreed to allow Ms. Bolbol to remain in the corridor to leaflet (until she moved toward the entrance of the compound at which point she was arrested) because she did not create a crowd control problem.

As above, there are at least serious questions as to whether the corridor and area surrounding the entrance to the animal compound constitute public fora, and the preliminary injunction can be fashioned such that there is no substantial hardship to Defendants. Accordingly, the Court recommends that the preliminary injunction be modified so as to permit a total of four persons (Plaintiffs and persons acting in concert with them) to have access the corridor, as well as the area outside of but directly adjacent to the corridor, in order to engage in free speech activity. This free speech zone should extend the length of corridor up to the entrance of the animal compound excepting, however, any space within ten feet of the compound entrance to safeguard against traffic congestion. *Cf. Schenck v. Pro-Choice Network*, 519 U.S. 357 (1997) (upholding injunction provisions that prohibited demonstrations within 15 feet of abortion clinics' doorways, parking lot entrances, driveways, and driveway entrances in deference to the district court's reasonable assessment that such zones were necessary to insure access to the clinics).

C.      Entrance of Animal Compound

For the reasons stated above, the Court recommends there be ten-foot buffer zone around the entrance to the animal compound from which Plaintiffs and those acting in concert with them may be excluded. Furthermore, along with all other patrons, Plaintiffs may be temporarily evacuated from the gap between the corridor and entrance to the compound to permit movement of equipment and/or animals through the gap.

D.      Upper West Landing Area

In the prior report and recommendation on Plaintiffs' motion for preliminary injunction, the Court discussed at length Plaintiffs' right to access the north ramp and north landing of the Arena. Now Plaintiffs wish to access an additional part of the Arena landing, *i.e.*, the upper west landing.

1  Plaintiffs explain that this area affords them an opportunity to videotape animals in the animal
2  compound from a different vantage point.

3       At the hearing on July 31, Defendants stated that they were willing to give Plaintiffs partial
4  access -- *i.e.*, to give Plaintiffs access up to the point where there are doors which Defendants claim
5  are used only for emergency purposes. Defendants' main concern seemed to be that the area where
6  the doors are should not be included for security reasons. Defendants argued that the partial access
7  would give Plaintiffs a sufficient vantage point for the animal compound area.

8       Plaintiffs' counterproposal was that they be allowed access up to the point where the west
9  ramp joins the landing -- an area that would include the doors. Plaintiffs asserted that Defendants'
10 proposal was not adequate because the circus constantly changes the configurations of the animal
11 compound such that certain areas of the west landing could provide better vantage points depending
12 on the configuration. Plaintiffs also contended that, contrary to what Defendants argued, the doors
13 are not used for emergency purposes only.[6]

14      Even assuming that the doors at issue are used only for emergency purposes, Plaintiffs' video
15 footage indicates that there are a number of people walking in the upper west landing area after a
16 circus performance is over, including the area proximate to the doors at issue. Even if the general
17 public is deterred from general access to this landing, there are serious questions as to whether the
18 upper west landing is a public forum under the California Constitution. It is difficult to see what
19 hardship is caused by Plaintiffs' presence in the landing for purposes of observing and videotaping
20 the animal compound.

21      Accordingly, the Court recommends that the preliminary injunction allow up to four persons
22 (Plaintiffs and persons acting in concert with them) access to the area as defined in Plaintiffs'
23 counterproposal. The Court notes that the limit of four persons is consistent with its prior report and
24 recommendation on Plaintiffs' motion for preliminary injunction.

---

[6] The area that Plaintiffs seek access to would not include the vents discussed in Defendants' papers.

E.     Entrance to North Tunnel

Finally, Plaintiffs wish to access the entrance to the north tunnel or at least the area directly adjacent to the entrance. Plaintiffs' desire for access to this area is once again to videotape -- *i.e.*, to videotape the animals as they are transported from the animal compound and through the north tunnel itself. It is important to Plaintiffs that they be able to view the entire tunnel. Plaintiffs argue that Defendants and/or the circus have time and again crafted obstacles in the attempt to block Plaintiffs' view into the north tunnel (*e.g.*, by putting up plywood boards near the entrance to the tunnel). Defendants argue in response that this area is particularly sensitive because animals are being transported back and forth and that the plywood barrier was installed to prevent objects from being dropped or thrown at the animals. Defendants also contend that the stairway adjacent to the tunnel has historically been closed for this reason.

Although Plaintiffs' basic position is once again that there is no evidence to support Defendants' concerns, Defendants' concerns are legitimate. If multiple persons were allowed without restrictions into the area through which the animals enter, the likelihood of danger, either to the animals or even the persons themselves, would be substantial. The Court does not agree with Plaintiffs' suggestion that, in this instance, there must be concrete evidence that a problem has actually occurred before Defendants' concerns may be deemed legitimate. On the other hand, there is evidence that Plaintiffs had access to the area immediately adjacent to the tunnel entrance in previous years. There was also evidence at the hearing on the contempt motion that Plaintiffs have never caused a problem for the animals.

Again, there is a serious question on the merits of Plaintiffs' constitutional claims as to this area, and a preliminary injunction that will provide limited access to protect Defendants' interests tips the balance of hardships in Plaintiffs' favor. Balancing Defendants' and Plaintiffs' interests, the Court recommends that one person (either Mr. Cuviello, Ms. Bolbol, or an individual working in concert with them) be permitted access to the area immediately adjacent to the entrance to the north tunnel in order to observe and videotape the animals entering the Arena. For that person to be able to exercise his or her free speech rights, the person must be given access such that he or she may have a relatively unobstructed view through the inside of the north tunnel (*i.e.*, as the animals walk

11

1 through). Such person is not entitled, however, to unfettered access to this area. The person is
2 permitted to videotape from one spot which does not block the flow of traffic of animals and/or
3 circus equipment into the north tunnel but which has a clear view of the entire tunnel. That spot
4 shall be designated by the Joint Venture/SMG and conveyed to security staff (including the Oakland
5 police) and Plaintiffs thirty (30) minutes in advance of entry of the animals.

F.   Distribution of Preliminary Injunction

Plaintiffs' request that the Oakland police be enjoined from working with the Joint Venture/SMG in providing security for the Arena during the circus is unwarranted. Instead, to insure cooperation and compliance with this preliminary injunction, the Court recommends that, as part of the preliminary injunction, Defendants be required to distribute copies of the preliminary injunction to any security manager, security guard, and/or police officer providing security at the Arena during the August 2009 circus engagement. This should not impose an undue burden on Defendants, either in terms of expense or time, and will help ensure that there is compliance with the injunction. Moreover, all security personnel should be briefed as to the material terms of the injunction.

In addition, the Court recommends that Defendants designate one "point person" during the entirety of the circus engagement at the Arena, who shall be responsible for communicating with Mr. Cuviello and Ms. Bolbol in the event of a dispute and who has the power to make immediate decisions in regard thereto.

### III.   RECOMMENDATION

For the foregoing reasons, the Court recommends that the stipulated preliminary injunction be modified. More specifically, the Court recommends that up to four persons, including Plaintiffs and persons working in concert with them, be permitted to unfettered access without any ticket requirement the following areas in order to conduct their free speech activity (*i.e.*, videotaping, displaying signs, leafletting, or otherwise protesting):

(1)   A three-foot wide walkway running alongside the perimeter wall of the animal compound.

(2)   The barricaded corridor leading to the animal compound, the area outside of but directly adjacent to the corridor, and the gap between the corridor and the animal compound entrance except

that there shall be a ten-foot buffer zone surrounding the entrance of the compound. Plaintiffs may temporarily be moved from the gap to permit movement of equipment and animals.

(3)  The upper west landing area, up to the point where the west ramp joins the landing.

(4)  One specific spot located in the area adjacent to the entrance to the north tunnel, which has a clear view of the entire tunnel. As discussed above, here, only one person rather than four shall be permitted access.

(5)  The north ramp and landing.

(6)  The northeast stairs and base of the stairs.[7]

Furthermore, Plaintiffs and persons acting in concert with them should be permitted free access to all exterior areas of the Arena and parking lot which are otherwise open to the public.

Finally, the Court recommends that briefing on the preliminary injunction and distribution of copies of the preliminary injunction be provided as discussed above and that a point person be designated during the circus engagements to resolve any problems that may arise.

The preliminary injunction need only apply to circus events scheduled at the Coliseum/Arena, such as the Ringling Brothers Circus which will hold performances at the Coliseum/Arena in August 2009, and should continue in efffect until final judgment.

Any party may file objections to this report and recommendation with the district judge by noon, August 7, 2009. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72; Civil L.R. 72-3. The Court shortens the normally applicable 10-day period to file an objection given the exigent circumstances

///
///
///
///
///
///

---

[7] Access to the north ramp and landing was required by the first preliminary injunction ordered by the presiding judge, as well as the parties' stipulated preliminary injunction. Access to the northeast stairs and base was required by the parties' stipulated preliminary injunction.

(*i.e.*, the circus engagement is scheduled to begin on August 12, 2009). *See Tripati v. Drake*, No. 89-55330, 1990 WL 100242, at *1 (9th Cir. July 19, 1990) (unpublished memorandum); *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978); *Hispanic Counseling Center, Inc., v. Incorporated Village of Hempstead*, 237 F. Supp. 2d 284, 289-90 (E.D.N.Y. 2002).

Dated: August 4, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge